# In the Federal District Court
# For the District of Puerto Rico

| | |
|---|---|
| **BENJAMIN ARES-PEREZ**<br>*Plaintiff*<br><br>**Vs.**<br><br>**CARIBE PHYSICIANS PLAZA, CORPORATION, D/B/A, CARIBBEAN MEDICAL CENTER, DR. JOSE A. ROSARIO-RODRIGUEZ, by himself and on behalf of his Conjugal Legal Partnership formed with Joan Doe-Rosario, "SINDICATO PARA LA SUSCRIPCION CONJUNTA DE SEGUROS DE RESPONSABILIDAD PROFESIONAL MEDICO HOSPITALARIA" (SIMED) and ABC INSURANCE COMPANY**<br>*Defendants* | **CIVIL NO. 15-1172**<br><br><br><br>**TRIAL BY JURY DEMANDED** |

## COMPLAINT

**TO THE HONORABLE COURT:**

**COME NOW** plaintiff, through the undersigned counsel, and very respectfully, states, alleges and prays as follows:

### I. NATURE OF THE ACTION

1.1     This is an action brought by plaintiff seeking compensatory damages as a result of the codefendants' tort and negligent actions and omissions. These acts and omissions allegedly occurred when plaintiffs' brother Pedro Ares-Pérez was brought to Caribbean Medical Center after the bicycle he was riding upon was struck by a motor vehicle.  As the direct result of

codefendants' negligent acts and omissions plaintiffs' damages were caused, related particularly with his brother's demise.

## II. JURISDICTION AND VENUE

2.1    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331, as plaintiff is of diverse citizenship from all of the defendants and the amount in controversy, exclusive of interest and costs, is in excess of seventy five thousand dollars ($75,000.00).

2.2    Venue is proper pursuant to 28 U.S.C. §1391(a), as all the events and omissions, giving rise to the claim, occurred within the jurisdiction of Puerto Rico.

2.3    According to 28 U.S.C. §1332 and the Seventh Amendment of the United States constitution, the plaintiff demands trial by jury in all the causes of action asserted herein.

## III. THE PARTIES

3.1    Plaintiff Benjamin Ares-Pérez resides in the State of Illinois and is the brother of the deceased Mr. Pedro L. Ares-Pérez.

3.2    Caribe Physicians Plaza Corporation, D/B/A Caribbean Medical Center (CMC) is an entity duly organized in accordance with the laws of the Commonwealth of Puerto Rico, although owning and operating an emergency department at its facilities in Fajardo, Puerto Rico, is not a trauma center capable to treat and manage multi traumatized patients. As more particularly set forth below, the negligent acts and omissions of said defendant's agent, as Dr. José A. Rosario-Rodríguez and CMC's ancillary services, caused and contributed to patient's damages and demise and also, to plaintiff's damages alleged herein.

3.3    Codefendant Dr. José A. Rosario-Rodríguez, his wife Joan Doe Rosario, and the conjugal partnership formed between them are citizens of the Commonwealth of Puerto Rico.

Dr. Rosario is the emergency room physician who managed and treated Pedro Ares-Pérez on August 14, 2013 at the emergency room of the CMC at Fajardo, Puerto Rico.

3.4    "Sindicato para la Suscripción Conjunta de Seguros de Responsabilidad Profesional Médico Hospitalaria" (SIMED) and or ABC Insurance Company are entities duly organized in Puerto Rico, in accordance with the laws of the Commonwealth of Puerto Rico which provided medical malpractice insurance coverage to codefendant Dr. José A. Rosario-Rodríguez and or CMC.

## IV. ALLEGATIONS OF FACTS COMMON TO ALL CAUSES OF ACTION

4.1    At the time of his demise, as more particularly set forth below, Mr. Pedro Ares-Pérez was 51 years old, with not significate medical history.

4.2    Mr. Ares-Perez was doing well August 14, 2013, while driving his bicycle back home in Fajardo, Puerto Rico, was struck by an automobile and suffered multiple trauma.

4.2    The paramedics from 9-1-1 arrived to the accident scene, examined him, placed a cervical collar and took Mr. Ares-Pérez to the Caribbean Medical Center's emergency room, which, apparently, was the closest medical facility, arriving there about 7:00 pm.

4.3    Patient's vital signs were initially documented as follow:

- Temperature: 39.8°
- Heart rate: 125
- Respiratory Rate: 23/min.
- Blood Pressure: 127/88
- Pulse Oximeter: 97%

4.7    Patient's condition was categorized by the triage nurse as *urgent*, although referring him to the observation area to wait for a physician.

4.8    Patient was evaluated by Dr. José A. Rosario-Rodríguez at 7:15 pm. documenting that: *patient was brought by emergency paramedics, immobilized and with a Philadelphia type*

*cervical collar, as the result of multiple body trauma, being struck by an automobile one hour before.*

4.9     On history, patient was described as having blurred vision, respiratory difficulty and abdominal pain.

4.10     At physical examination, the physician found patient having multiple bodily abrasions, aside from pain in his chest and pelvis.

4.13     The diagnosis made by Dr. Rosario was head trauma, to the maxillofacial area, chest, hips and pelvis and multiple skin abrasions.

4.14     Dr. Rosario ordered a CBC, BPM, urinalysis, dextrose and arterial blood gases. Moreover, he ordered CT-Scans of the head, maxillofacial area, cervical area, chest and abdominopelvic, aside from X-Rays from the shoulder, elbow, left hip, including pelvis and both knees, local wound care of the abrasions, Ancef®, tetanus toxoid, morphine and prepare for suture, aside from taking his blood pressure each 15 minutes.

4.15     The blood samples for arterial gases and other lab tests were taken by nurses past 8:00 pm.

4.16     The arterial blood gases result became available at 8:15 pm and showed that patient's respiratory condition was compromised, although Dr. Rosario did not recognize it, so he did not request a surgery's consultation neither prompted a transfer to an adequate medical facility with appropriate and capable staff and equipment.

4.17     At 9:55 pm patient was taken out of ER to the radiology department for image studies ordered.

4.18     After some X-Rays were taken, it was noted on patient's charts that he began with respiratory difficulty so he was taken back to ER before the results were made available.

4.19    Despite of the multiple, obvious and painful bodily lesions, during the almost three hours that patient was hold in CMC neither the physician or the nursing staff suspected or became aware of the seriousness of patient's condition and the internal bleeding that might implied having struck by a motor vehicle.

4.20    At ER, patient had a cardiorespiratory arrest.

4.21    Being aware of patient's condition, including the presence of a subcutaneous emphysema, Dr. Rosario ordered to start the CPR protocol.

4.22    During the reanimation process, Dr. Rosario performed a thoracotomy on patient inserting a chest tube in his right flank.

4.23    The reanimation process by the physician and the nursing staff lasted for about 1 ½ hours, being the patient declared dead at 11:30 pm.

4.24    Because of the circumstances surrounding the case, a complete autopsy was performed of patient's cadaver at the Forensic Sciences Institute of Puerto Rico.

4.25    Among other internal lesions, the autopsy revealed multiple ribs fractures with associated intercostal infiltrates, which existence and potential danger Dr. Rosario did not suspect or became aware, particularly of the cardiorespiratory system at risk to be decompensated, as occurred.

## V.    MEDICAL MALPRACTICE & HOSPITAL NEGLIGENCE CLAIMS

5.1    Mr. Ares-Perez was evaluated at CMC and, from the moment he stepped into the emergency department, the management and treatment by Dr. Rosario and the nursing staff totally departed from the accepted standards.  Basic principles of acute management of a multi traumatized patient were completely ignored by both, nursing personnel and Dr. Rosario.

5.2     Mr. Ares-Perez should have been kept at the ER while Dr. Rosario should have ordered STAT portable X-Rays, cross table lateral cervical spine X-Rays and pelvic X-Rays to be done right there and an immediate trauma/surgical consultation and transfer to trauma center made right after. This was not made inasmuch as Dr. Rosario negligently did not recognized that patient's presentation was suggestive of him having severe traumatic injuries that would warrant it.

5.3     Dr. Rosario also deviated of the applicable medical standard by not recognizing that patient had respiratory system compromise as evidenced by the 8:13 pm result of the arterial blood gases test and by allowing Mr. Ares-Pérez to be taken from the emergency department to radiology prior to stabilizing his traumatic condition.

5.4     An adequate monitoring, with continuous cardiac monitor, pulse oximetry and frequent blood pressure checks, while in the emergency department should have been done. More notably, there is no written evidence that the emergency department personnel considered that patient could have a serious emergency medical condition that warranted this close monitoring.

5.5     Were it not for these breaches of the medical standard of care, Mr. Ares-Pérez would not have died on August 14, 2013. By not following the accepted and established medical standards during his visit to CMC, defendants deprived patient of his only opportunity to survive his medical condition.

5.6     During his visit to CMC, Mr. Ares-Perez was negligently treated by the defendant physician, as agent of CMC and its nursing staff, therefore being all jointly liable to plaintiffs for their negligent acts and/or omissions under the provisions of articles 1802 and/or 1803 of the Puerto Rico Civil Code.

5.7    As insurers of Dr. Rosario and CMC, SIMED and ABC Insurance Company are liable to plaintiff for their insured's negligence.

5.8    Dr. Rosario's named conjugal partnership responds for plaintiff's damages as it benefited from his medical practice.

## VI.    DAMAGES

6.1    As the direct and proximate result of the negligent acts and omissions of defendant's doctor and the hospital nursing staff, amounting to medical malpractice and hospital negligence alleged heretofore, plaintiff Benjamin Ares-Perez has suffered, is suffering and will continue to suffer intense and permanent emotional damages for his brother's loss, all of which are estimated in an amount of not less than $500,000.00.

## VII. STATUTE OF LIMITATIONS

7.1    The applicable statute of limitation of one year was tolled or interrupted by the filing of a medical malpractice civil lawsuit at the Court of First Instance, Fajardo Part, on August 13, 2014, which was dismissed without prejudice under local Rule of Civil Procedure 4.3 (c), by court's judgment entered on February 13 and notified on February 17, 2015.

**WHEREFORE**, it is respectfully requested from this Honorable Court to enter judgment on plaintiffs' behalf and against defendants, granting a judgment against co-defendants for the sums herein requested, together with pre-judgment interests, costs and reasonable attorney's fees and grant plaintiffs such other relief, as it may deem proper and necessary warranted by the proven allegations and the law.

In Caguas, Puerto Rico, this 25fth Day of February, 2015.

**VELÁZQUEZ LAW OFFICES, PSC**

Counsel for plaintiffs
PO Box 188
Caguas, Puerto Rico 00726
Tel. 787-744-9598
Fax 787-744-3482
Email: jfvlaw@gmail.com

*S/José F. Velázquez-Ortiz*
JOSE F. VELAZQUEZ-ORTIZ
USDC-PR 123310